# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

ROBERTA BALDERAS MONTALVO, )
)
Plaintiff, )
)
vs. )
) Case No. CIV-13-1329-D
CAROLYN W. COLVIN, Acting )
Commissioner of the Social )
Security Administration, )
)
Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for disability insurance benefits (DIB) and supplemental security income payments (SSI) under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record (hereinafter TR. ___). The parties have briefed their positions, and the matter is now at issue. For the reasons stated herein, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED** for further proceedings consistent with this report and recommendation.

## PROCEDURAL HISTORY

Plaintiff's DIB and SSI applications were denied initially and on reconsideration at the administrative level. At her request, Plaintiff appeared at a hearing before an

Administrative Law Judge (ALJ), who issued an unfavorable decision on March 8, 2013. (TR. 16-27). Plaintiff appealed the ALJ's unfavorable decision to the Social Security Appeals Council which found no reason to review the ALJ's decision (TR. 1-3). Thus, the decision of the ALJ is the final decision of the Commissioner. This judicial appeal followed.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to two inquiries: whether the administrative decision was supported by substantial evidence and whether the correct legal standards were applied. *See Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).

## THE ADMINISTRATIVE DECISION

In addressing Plaintiff's DIB and SSI applications, the ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520; 416.920. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 1, 2010, the alleged onset date (TR. 18). At step two, the ALJ determined that Plaintiff has severe impairments consisting of disorders of the lumbar spine, discogenic and degenerative; generalized arthritis; insulin dependent diabetes mellitus; hypertension; hyperlipidemia; history of coronary artery disease, status post 2006 stent replacement; and depressive disorder. (TR. 18).

At step three, the ALJ found that none of Plaintiff's impairments singly, or in combination, meets or equals any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 19).

At the first phase of step four, the ALJ assessed Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform "light work," as defined in 20 CFR 404.1567(b) and 416.967(b), except the claimant can understand, remember and carry out only simple instructions; make only simple work related decisions; deal with only occasional changes in work processes and environment; relate to supervisors and peers on a superficial work basis; and cannot communicate in the English language with the general public.

(TR. 21-22).

As for the second phase of the fourth step of the sequential evaluation, the ALJ made no findings regarding the characteristics or exertional requirements of Plaintiff's past relevant work. At the third phase of the step-four analysis, the ALJ stated his conclusory finding that Plaintiff could do her past relevant work. The ALJ apparently relied on the testimony of the vocational expert (VE) in determining that Plaintiff could perform her past relevant work. (TR. 26-27). Thus, the ALJ determined at the fourth step of the sequential process that Plaintiff is not disabled.

## ISSUES FOR REVIEW

Plaintiff contends that the ALJ erred as a matter of law by failing to discuss uncontroverted and/or significantly probative evidence that conflicted with his findings. Plaintiff also challenges the ALJ's step-four analysis in that the ALJ made no findings regarding the demands of Plaintiff's past relevant work at the second phase of step four

and relied only on the VE's conclusory findings that Plaintiff could perform her past relevant work as actually performed by Plaintiff.

## ANALYSIS

### A. The ALJ's Consideration of the Evidence

The regulations require the ALJ to "consider all evidence in [the] case record when [he] make[s] a determination or decision whether [claimant is] disabled." 20 C.F.R. §§ 404.1520(a)(3); 416.920(a)(3). The ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). As Plaintiff correctly notes, the ALJ failed to consider evidence conflicting with his RFC assessment.

The ALJ uses the RFC to determine whether the claimant is able to perform either past work (step four), or any work at all in the national economy (step five). 20 C.F.R. §§ 404.1545(a)(5); 416.945(a)(5). When assessing RFC, the ALJ must "consider all ... medically determinable impairments of which [they] are aware[.]" *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (alteration in original).

The critical issue regarding the Plaintiff's RFC was whether Plaintiff would be able to stand or walk six hours out of an eight-hour day. Observations and examinations of Plaintiff by treating and consultative medical providers differ on this issue. The ALJ chose to include those records which indicated Plaintiff could perform light work, while he excluded any mention of records which could undermine the RFC.

The ALJ disregarded evidence procured by MRI examination demonstrating Plaintiff's chronic compression fracture of the L-2 vertebral body. (Tr. 355). The ALJ

4

also dismissed Dr. Soo's having prescribed a cane, even though a copy of the prescription is included in the record, and Plaintiff was using a cane at the hearing. (TR. 387, 40). Rather, the ALJ simply stated that "the medical evidence generally indicates that the claimant is able to walk without assistance." (TR. 20).

Evidence to the contrary includes findings in a Disability Report-Field Office completed by A. Contreras-Ah based on evidence derived from a face-to-face interview with Plaintiff. The notes reflect the interviewer's observation that Plaintiff "walked with great difficulty." (TR. 209). Additionally, when Plaintiff's cardiologist performed a stress test on May 29, 2012, his medical notes reflect that Plaintiff's stress was chemically induced because of her unsteady and slow gait. (TR. 382). This evidence is significant because the cardiologist was not examining Plaintiff for evaluation of her ability to walk; the comment simply reflects the doctor's observation. Other significant evidence apparently ignored by the ALJ include findings of muscle spasms, decreased lumbar mobility, ankle swelling, weak heel and toe waking and diminished sensation in her right leg. (TR. 247, 249, 312).

In sum, the ALJ failed to consider and discuss evidence which contradicted his RFC. On remand, the ALJ should fairly consider all the evidence regarding Plaintiff's ability to ambulate effectively.

**B. The ALJ's Step-Four Analysis**

Step Four of the sequential evaluation is comprised of three phases. In the first phase, the ALJ must evaluate a claimant's physical and mental RFC, *see* SSR-86-8, and in the second phase, he must determine the physical and mental demands of the

claimant's past relevant work. 20 C.F.R. §§ 404.1520(e); 416.920(e). In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. See SSR 82–62, Soc. Sec. Rep. Serv., Rulings 1975–1982, 809; *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir.1993). At each of these phases, the ALJ must make specific findings. *See Henrie*, 13 F.3d at 361.

Because the ALJ chose to discuss and rely on only such evidence as supported his findings, the validity of the RFC is called into question. Moreover, the ALJ made no findings at the second phase of step four regarding the demands of Plaintiff's past relevant work. Rather, the ALJ skipped directly to the third phase of step four:

> The claimant is capable of performing her past relevant work as Church Cleaner (only as performed, not as defined) and a Deli Worker (as defined and performed).[1] This work does not require performance of work-related activities precluded by the claimant's residual functional capacity.

(TR. 27). It is apparent that the ALJ relied solely on the testimony of the VE in determining that Plaintiff could perform her past relevant work at the light exertional level and could, therefore perform her past relevant work. (TR. 26-27). But the testimony of the VE does not explain how she reached the conclusion that Plaintiff could perform her past relevant work at the light level, even though both jobs are defined as medium work in the Dictionary of Occupational Titles. (TR. 48). Plaintiff did not testify about the demands of her past relevant work. A 2011 Work History Report

---

[1] According to the VE, both "church cleaner" and "deli worker" are defined as medium work. The ALJ's statement that Plaintiff is capable of performing the "deli worker" job "as defined and performed" is contrary to the VE's testimony. The ALJ contradicts himself in the next paragraph.

completed by Plaintiff, who is not fluent in English, is the sole document in the record which discusses the physical requirements of Plaintiff's past relevant work as she performed it. (TR. 190-193). As Plaintiff notes, this document contains no information about her ability to adapt to changes in work processes or environment, and it contains no information about the amount of interaction with coworkers, supervisors, or the general public.

In sum, all three phases of the ALJ's step-four analysis are flawed. On remand, the ALJ will have the opportunity to make specific findings at all three phases of step four of the sequential evaluation.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **REVERSED AND REMANDED** for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **January 23, 2015**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on January 9, 2015.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE